# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| ROBERT ALLAN SEARS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV415-111 |
| | ) | |
| STANLEY WILLIAMS, | ) | |
| | ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Following affirmance of his conviction for aggravated assault and possession of a knife during the commission of a felony, *Sears v. State*, 292 Ga. 64, 64 (2012), Robert Allen Sears unsuccessfully sought state habeas relief, doc. 14-5 at 17,[1] *certificate of probable cause to appeal denied*, doc. 14-6, and now seeks federal habeas relief under 28 U.S.C. § 2254. Doc. 3-1. The State opposes. Doc. 13.

## I. BACKGROUND

From the *Sears* opinion:

---

[1]  For this and all other documents the Court is citing only to the page numbers imprinted on the top of each page by the Court's docketing software, and not the individual manuscript pagination (some of the State's documents, including trial transcripts, bear two sets of printed page numbers).

Robert Allen Sears was tried by a Chatham County jury and convicted of the murder of Isaiah Lovett, aggravated assault, and possession of a knife during the commission of a felony. . . . Construed most strongly in support of the verdict, the evidence shows that Sears went on the morning of August 29, 2008 to the Savannah boarding house in which Lovett lived. Several residents overheard Sears banging on the door to Lovett's room and yelling about a lawnmower that Lovett apparently had borrowed. A neighbor saw Lovett emerge from his room, and he observed Lovett and Sears engaged in a physical altercation, which left Lovett bleeding profusely from several stab wounds. Lovett subsequently died of those stab wounds. Although no one testified that he saw Sears with a knife during the altercation, Sears's shirt was covered in blood afterwards, and he was seen with a knife as he fled from the boarding house.

When Sears was apprehended by law enforcement later that morning, the blood of the victim was found on his hat, and lacerations consistent with the stabbing of Lovett were observed on his hands. While Sears was in jail, he told another inmate that he killed Lovett, and he said that he hid the knife, as well as the shirt that he had been wearing at the time of the stabbing, inside a shed on property on which he had been staying. The inmate informed law enforcement of the confession, and when police officers went to the shed, they found the knife and shirt, on both of which was Lovett's blood.

*Sears*, 292 Ga. at 65 (footnote omitted).

That court ruled that sufficient evidence supported Sears' conviction. *Id.* Sears' claims here travel on a souped-up version of the "hybrid-self-defense"[2] that his lawyer advanced at trial: After Lovett

---

[2] "Hybrid" in the sense that Sears claimed he was defending himself from Lovett's attack *and* someone else stabbed Lovett to death.

attacked Sears, Ramel Roberson -- the boarding house neighbor referenced by the *Sears* court -- intervened. Roberson then knifed Isaiah Lovett to death, stuck the knife in Sears' hand, and told him to leave, which he did.[3] Doc. 8 at 1-2. Petitioner's claims thus pivot on this version of the facts (hence, for example, his appellate counsel was deficient, and the state courts erred, because they got the story "wrong").

The trial record easily supports the *Sears* court's version.[4] Roberson, like Lovett, rented a room in the Savannah, Georgia rooming house where Lovett was stabbed. Roberson and other rooming house tenants reacted to the Sears-Lovett commotion and were on the scene (while Sears fled) when law enforcement and emergency medical personnel arrived. Doc. 14-9 at 23-25; doc. 14-10 at 43-33, 49. Roberson

---

[3] The gist of Sears' defense, distilled from Sears' trial testimony: He went to Lovett's room about a lawn mower that he'd lent Lovett, and that Lovett failed to return. While Sears knocked on Lovett's door and tried to talk to him through the door, Roberson emerged from a nearby room and joined him -- because Lovett owed Roberson money, too. Lovett emerged, only to attack Sears. Sears knocked the knife out of Lovett's hand, Roberson picked it up and stabbed Lovett, then stuck the knife in Sears' hand before directing him to leave. Sears left and hid the knife, which the police later found after a jailhouse "snitch" alerted them to its location. Doc. 14-10 at 118-19; doc. 14-12 at 35-53.

[4] This Court does not accept Sears' evidentiary narrative. Instead, it determines only if the state court's factfinding falls within the scope of what would support a rational jury's reasonable-doubt level finding, consistent with "reference to the substantive elements of the offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 & n. 16 (1979); *French v. Carter*, 828 F. Supp. 2d 1309, 1332 (S.D. Ga. 2012). Even at that, it must accord § 2254(d)-level respect to the *Sears* court's evidentiary sufficiency determination.

got substantial blood on him, and police photographed him (according to a police witness at trial) "[be]cause Mr. Ramel Roberson witnessed Mr. Sears with the knife and he actually broke it up and when Mr. Sears tried to come back up the stairs [to Lovett's room] he told Mr. Sears he can't come back, he need[ed] to leave." Doc. 14-9 at 40; *see also* doc. 14-10 at 16 (police witness, who arrived at the scene within about 15 minutes of the fight: "and I asked [Roberson] did he saw [sic] anything and he say [sic] he saw the whole thing. . . ."); *id* at 23-24 (Roberson saw Sears stabbing Lovett -- though at first he thought he was simply punching Lovett until Lovett dropped to the floor; Sears then turned and ran out, then tried to come back into Lovett's room but Roberson told him "you need to leave.").

Since Sears' entire § 2254 effort turns on Roberson as the attacker, it is worth noting that the prosecution called Roberson himself to the stand, thus granting Sears a full opportunity to confront him. Roberson, who remained on the scene while Sears fled, confirmed the foregoing police testimony. Doc. 14-10 at 62-66 (testifying that the Sears/Lovett argument over Sears' lawnmower awakened him, he went out into the hall and watched Lovett emerge from his room while Sears stabbed him);

*id.* at 69 (he saw a knife in Sears' hand when Sears exited the rooming house); *id.* at 78-80 (Roberson deduced that he got Lovett's blood on himself just from being in the area, and when Sears passed by him as Sears left); *id.* at 81 (after Sears and Lovett parted, Lovett went back into his room and "yelled call nine-one-one;" Sears went downstairs to leave, then started to return, but Roberson shooed him away).

Dewayne Burton, a fellow boarding house tenant, also came out of his room in time to see a man of Sears' race (black) flee with a shiny object in his hand; Burton then called 9-1-1. Doc. 14-10 at 24, 91-97. The police, for that matter, encountered other witnesses, though they were not called to the stand -- presumably on cumulative-testimony grounds. *See* doc. 14-10 at 100.

Before the state habeas court and now here, Sears refuses to accept those facts and insists on re-litigating his "hybrid self-defense" theory. He cites a June 8, 2015 affidavit[5] from his long-time friend, Lawrence Davis. An excerpt:

---

[5] He tendered it to this Court nearly a *year* after the state habeas court ruled on his habeas petition, doc. 14-5 at 1, though he used that court's caption, evidently to make it look like he filed it there (it lacks that court's filing stamp). Doc. 8-1 at 1. It is hearsay. *See Bowe v. United States*, 2009 WL 2899107 at *9 (S.D. Ga. May 20, 2009) ("Habeas cases . . . require, at the end of the day, admissible (non-hearsay) evidence. The initial presentation can be, as in ordinary summary judgment cases, in affidavit

B) Robert A. Sears stated to him [Davis] directly after the incident that the actual killer forced the weapon used into his hand[.]

C) Robert A. Sears stated to [Davis] directly after the incident that he [Sears] was "*frighten*[ed]" and needed a cigarette. Sears stated that he [Sears] had done nothing wrong and just wanted to calm his nerve[s] after what he'd witness[ed].

4) [Sears] would have testified to these material and relevant facts in an open court of law and before a sworn jury, had [Sears' defense counsel] William S. Lewis[,] questioned him on these facts.

5) That because of attorney William S. Lewis['] ineffectiveness[,] the jury was unaware of these facts and couldn't consider them in making their decision of guilt or innocence.

Doc. 8-1 at 1-2 (emphasis original); *see also* doc. 8 at 1-2; doc. 14-12 at 38

(Sears' trial testimony that, for about 9-10 weeks before he was arrested,

he had been staying in Davis' abode).

---

form, so long as it is evident that from the face of what is presented it can be reduced to admissible form at an evidentiary hearing."); *see also Jones v. Sec'y, Fla. Dept. of Corr.*, 834 F.3d 1299, 2016 WL 4474677 at * 14 (11th Cir. Aug. 25, 2016) (discussing what a § 2254 petitioner must proffer to warrant a habeas evidentiary hearing).

Lying to this Court, by the way, is a prosecutable offense. *See United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (defendant's false statement in his habeas petition that he had not previously filed a § 2255 motion was "material" for purposes of perjury prosecution; statement fooled the clerk of the court into accepting the "writ" for filing, and led the magistrate judge to consider its merits until she discovered that the "writ" was a successive § 2255 motion in disguise); *United States v. Dickerson*, CR608-36, doc. 1 (S.D. Ga. Dec. 11, 2008) (§ 2255 movant indicted for perjury for knowingly lying in his motion seeking collateral relief from his conviction); *id.*, doc. 47 (guilty verdict), cited in *Irick v. United States*, 2009 WL 2992562 at *2 (S.D. Ga. Sept. 17, 2009) (unpublished); *see also Colony Ins. Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1378 n. 2 (S.D. Ga. 2012).

Petitioner also complains that the prosecution "manufactured" evidence against him using a jailhouse informant, doc. 8 at 4, Roberson had told him (just before the killing) that Lovett owed Roberson money,[6] doc. 8 at 5, both Roberson and Lovett had been smoking crack just before the knifing, and "[i]t is impossible to believe [Sears] committed this crime and only got one drop of blood from [Lovett] on his clothing, while Roberson claims he touched nothing, and [yet was] covered in it." *Id.* at 7. For such assertions Sears cites his own trial testimony (which the jury was authorized to disbelieve) and ignores the ocean of contrary evidence against him.

Sears raises other claims, too, doc. 8-1, but otherwise hews to his main defense theory -- that Lovett, known as "Blade," was a violent criminal who stole friends' personal property to sell for drugs and killed those who challenged him. "This is exactly what happened in my case," says Sears, "except when [Sears] knocked the knife from his hand,

---

[6]  Sears testified at trial.  He does not state what prevented him from disclosing that fact while explaining his encounter with Lovett, including the anger and anger-driven behavior that Lovett exhibited toward him.  It appears that, years later and with plenty of time to do so, Sears has simply conjured up new, defense-bolstering "memories" of what happened that day.

another 'Mark'[7] picked up the knife and killed 'Blade' himself." Doc. 8 at 5 (footnote added); *see also* doc. 14-8 at 110. A competent lawyer, he contends, would have *successfully* pursued this wrong-man defense.[8] *Id.* at 1-9.

## II. GOVERNING STANDARDS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) bars federal courts from granting habeas relief to a state petitioner on a claim that was adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The case law has fleshed out these statutory terms:

> a state court decision is based on an "unreasonable application" of clearly established federal law when it (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not

---

[7]  It's unclear what "Mark" means. Perhaps that's slang for Roberson.

[8]  Again, the trial record shows that his trial counsel *did*, just not successfully.

apply or unreasonably refuses to extend that principle to a new context where it should apply." [*Williams v. Taylor*, 529 U.S. 362, 407 (2000)]. The "'unreasonable application' inquiry . . . ask[s] whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. This "requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." (internal quotation marks omitted)).

*McCartney v. Sec'y, Fla. Dept. of Corr.*, 2016 WL 5349213 at * 4 (11th Cir. Sept. 26, 2016) (footnote omitted). "[A] state court's decision must be not merely wrong but so wrong that no reasonable judge could have reached that decision." *Dassey v. Dittmann*, ___ F. Supp. 3d ___, 2016 WL 4257386 at * 18 (E.D. Wis. Aug. 12, 2016) (citing *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)).

This Court's review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011)." *Jones*, 2016 WL 4474677 at * 8. It "must presume the state court's factual determinations are correct, unless the petitioner rebuts that presumption with 'clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." *Id*. That's a tough showing to make: "The state court's

decision must have been more than incorrect or erroneous. It must have been objectively unreasonable. If the AEDPA standard is difficult to meet, that is because it was meant to be." *Id.* at *8 (quotes, cites and alterations omitted).

For ineffective assistance of counsel (IAC)[9] claims, courts grant one layer of deference to counsel's decisions and a second to state court IAC

---

[9] Long has it been the case that:

> [t]o prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064.

*Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016). And prejudice occurs if "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rivers v. United States*, 2016 WL 2646647 at * 1 (S.D. Ga. May 9, 2016) (quoting *Strickland*, 466 U.S. at 687).

A typical ineffective assistance claim succeeds only where counsel has, metaphorically speaking, shot at the side of a barn yet missed. *See Sullivan v. Secretary, Fla. Dep't. of Corr.*, ___ F.3d ___, 2016 WL 5075937 at * 7 (11th Cir. Sept. 20, 2016) (an attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance, as element of ineffective assistance of counsel); *see also id.* at * 8 (in prosecution for fleeing and attempting to elude a law enforcement officer, trial counsel was ineffective in presenting a voluntary intoxication defense long after it had been statutorily abolished, instead of advising defendant to accept state's pretrial plea offer).

rulings (hence, "double deference"). *Dorvil v. Sec'y, Dep't. of Corrs.*, 2016 WL 6090852 at * 4 (11th Cir. Oct. 19. 2016) ("The tandem effect of the deference given generally to state court decisions under AEDPA, combined with the deferential standard applied to review of an attorney's performance when challenged as being ineffective, means that it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotes and cite omitted). Courts thus determine "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.' *Richter*, 562 U.S. at 105." *McCartney*, 2016 WL 5349213 at * 4.

Finally, sandbagging is prohibited. Petitioners must submit their claims to the state courts first. New claims advanced to a federal habeas court face dismissal on exhaustion -- if not procedural default -- grounds.[10]

---

[10] "A federal habeas court cannot reach the merits of a claim that was procedurally defaulted in state court unless the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *Sullivan*, 2016 WL 5075937 at * 4. Ineffective assistance of counsel can supply cause in this context. *Id.*; *see also Allen v. Secretary*, 2016 WL 762648 at * 5 (M.D. Fla., Feb. 24, 2016) ("To establish cause for a procedural default, a petitioner must

## III. ANALYSIS

### A. Defaulted Claims

The State correctly notes that poor writing hampers Sears' attempts to overcome the "laundry list" doctrine[11] that this Court previously applied against him.  Doc. 13-1 at 3-4 & n. 1; doc. 4 (previous Report and Recommendation (R&R) advising denial because Sears had

---

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court. To show prejudice, a petitioner[ ] must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. In other words, he must show at least a reasonable probability of a different outcome.") (quotes and cites omitted).

In this case the State seeks enforcement of its procedural default statute on independent state law grounds, doc. 13-1 at 13-14 (citing O.C.G.A. § 9-14-51 and *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (when it is obvious that unexhausted claims would be procedurally barred in state court, courts can forego needless exhaustion-dismissal "ping-pong" and "just treat those claims now barred by state law as no basis for federal habeas relief.")); *see also* doc. 14-5 at 13-15 (state habeas court Final Order barring four claims as procedurally defaulted).

To that end, there need not exist a state court judgment expressly resting on a state procedural bar, where a claim is new (*i.e.*, it has never been presented to the state courts).  *Teague v. Lane*, 489 U.S. 288, 299 (1989).  That bar nevertheless can be applied by this Court.  *Conner v. Hall*, 645 F.3d 1277, 1288 n. 10 (11th Cir. 2011) ("When applied to ordinary habeas petitioners who simply failed to include available claims in their initial petitions, the Georgia successor statute, O.C.G.A. § 9-14-51, is a valid procedural bar."); *see French v. Carter*, 828 F. Supp. 2d 1309, 1331 (S.D. Ga. 2012) (applying Georgia's procedural default rule to preclude federal habeas review of petitioner's IAC claim based on counsel's failure to challenge venue at state trial, where petitioner failed to raise that claim before the state habeas court).

[11]   *See Brown v. Tatum*, 2016 WL 2977279 at *2 (S.D. Ga. May 20, 2016) ("Those who seek habeas relief cannot simply laundry-list their claims and hope that the court will develop (hence, litigate) them on their behalf.").

merely "laundry listed," but not supported, his claims); doc. 9 (Order rejecting that R&R after Sears augmented his claims in his Fed. R. Civ. P. 72(b)(2) Objections).

The Court also agrees that all of Sears' claims, as illuminated in Part III(A) of the State's Answer-Response and supporting brief (citing them as they appear within docs. 7, 8, & 8-1), are new and thus procedurally defaulted (per n. 10 *supra*) because Sears failed to present them to the state courts on direct or collateral appeal. Doc. 13 at 2-10; doc. 13-1 at 3 ("None of these claims were raised in [Sears'] state collateral attack"); *id.* at 7 (noting Grounds 2A-2R, 2T-2W, and portions of 2X and 2Y, as set forth in doc. 13, are defaulted, while grounds 2D, 2E and 2W fail to state claims for relief); doc. 14-2 at 5-6; doc. 14-3; doc. 14-4; doc. 14-7 at 74-95; doc. 14-5 (Final Order) at 16). Nor does he supply any cause to overcome them.

## B. Miscellaneous Claims

By selectively accentuating parts of the record and blending them with his "Davis affidavit facts," Sears in effect has placed himself on the jury and re-characterized key evidence streams (*e.g.*, Roberson's and Lovett's behavior) in his favor. "Somehow" that enables him to complain

that the state court rulings are flawed and must be overturned by this Court. Doc. 7 at 1-7; doc. 8 at 1-21; doc. 15 at 1-5. That obviously fails to show AEDPA unreasonableness (*i.e.*, that the state courts' factual determinations and rulings are objectively unreasonable, etc.).

Hence, those claims fail. They include Sears' spin on his "hybrid-defense" -- essentially a rehash his trial defense strategy, with bolstering facts (*e.g.*, what he claims he told his friend after the incident) and his own spin on what he believes the law required. Doc. 8-1 at 1-19 (claiming a *Brady* violation for under-disclosing Lovett's violent past, that defense counsel should have unearthed and underscored Roberson's record, etc.); *see also* doc. 7 at 1-7 (recharacterizing the trial evidence to conform with this defense). And, given the overwhelming witness evidence, it was well within reason, as a matter of trial strategy, for Sears' trial counsel to *not* try and finger Roberson as the "real" killer.[12]

In fact, no reasonable lawyer would insist -- in the face of multiple eyewitness testimony *and* murder-weapon *and* blood spatter, DNA

---

[12] "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689-90), quoted in *Cray v. United States*, 2016 WL 6125515 at * 8 (M.D. Fla. Oct. 20, 2016).

evidence[13] -- on insulting the jury's intelligence with the story Sears told (*i.e.*, that Roberson did it, then "stuck" the knife in Sears hand and told him to leave). Sears cannot re-litigate his trial here, and all of the claims perched on that premise fail outright. *See* doc. 7 at 1-7; doc. 13; doc. 15 at 1-6.

Petitioners' ineffective assistance claims against appellate counsel, in turn, also fail because they simply dial down to trial counsel's failure to litigate Sears' "true facts" about the stabbing, insufficiently illuminate for the jury the State's "snitch" witness' lies,[14] or question witness Lawrence Davis about a phone call he made to Sears. Doc. 7 at 4; doc. 15 at 4. Like Sears' other claims here, they are perched on the way petitioner would have liked the story line to unfold, as "guided" by his

---

[13] Sears makes much of the fact that Lovett's blood was found only his hat, not on his shirt, and that more of Lovett's blood was found on Roberson than him. *See, e.g.*, doc. 15 at 2-3; *id.* at 6 (seeking "DNA testing" of his shirt and Roberson's). The jury had enough forensic and eyewitness evidence before it to sift and sort these discrepancies. Sears comes nowhere close to showing the sort of fundamental error needed to pierce the 2254(d)-level deference that this Court must accord to the state court, evidentiary sufficiency finding.

[14] In fact, trial counsel exhaustively cross-examined him, and got him to admit to claiming that he dreamed about a crime before it even happened. Doc. 14-12 at 102-113.

own testimony and bolstered by his friend Davis' affidavit.[15]   Again, this Court is obligated to respect the facts determined by the state courts, and they do not support any of Sears' evidence-based narrative and associated claims.

## C. Actual Innocence

Since the centerpiece of Sears' § 2254 petition is an innocence-based claim (*i.e.*, that Roberson actually killed Lovett), it is worth pausing to note that he has raised that claim in the wrong court. *Herrera v. Collins*, 506 U.S. 390, 408-410 (1998) (claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief; state "new trial motion" and other error-correction procedures, unless shown to transgress fundamental fairness principles, are presumed to suffice in this context).   Sears knows this -- he placed the state habeas court's caption on his "Davis affidavit," then slipped it into *this* Court's record, evidently to make it seem like he timely presented it to the state habeas court.   Doc. 8-1 at 1-2 (June 8, 2015

---

[15]   Note that the State habeas court provided Sears with a full evidentiary hearing, which included his thorough examination of appellate counsel Steven Lee Sparger, yet Sears never fairly presented his "snitch" and "phone call" claims, *see* doc. 14-7 at 15-70, but instead -- some two years after that hearing -- has simply elaborated (with new facts, factual spins and corroborating bits of evidence, per his "Davis" affidavit) on the very defense to which he testified at trial.   Doc. 8-1.

"Davis" affidavit supporting petitioner's identification defense); doc. 14-5 (state habeas court's July 31, 2014 "Final Order"). *See Herrera,* 506 U.S. at 418-19 (noting that exonerating affidavits presented in § 2254 proceedings are not *per se* prohibited, but will not suffice if in fact there was an opportunity to present such evidence to the trial jury); *id.* at 390-91 ("[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.").[16]

---

[16]    *Herrera* assumed *arguendo* that some sort of federal habeas right existed to entertain exonerating affidavits:

> This is not to say that petitioner's affidavits are without probative value. Had this sort of testimony been offered at trial, it could have been weighed by the jury, along with the evidence offered by the State and petitioner, in deliberating upon its verdict. Since the statements in the affidavits contradict the evidence received at trial, the jury would have had to decide important issues of credibility. But coming 10 years after petitioner's trial, this showing of innocence falls far short of that which would have to be made in order to trigger the sort of constitutional claim which we have assumed, *arguendo*, to exist.

*Herrera*, 506 U.S. at 418-19. After *Herrera*, actual innocence claims based on newly discovered (*e.g.*, recanted) evidence cannot support "a basis for federal habeas corpus relief absent an independent constitutional violation occurring in the underlying state criminal proceedings. *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002)." *Brown v. General*, 2016 WL 5415092 at * 7 (M.D. Fla. Sept. 28, 2016); *see also Magluta v. United States*, 2016 WL 4524462 at *3 (11th Cir. Aug. 30, 2016) ("The Supreme Court has 'not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.' *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1931, 185 L.Ed.2d 1019 (2013) (citing *Herrera v. Collins*, 506

## D. Juror Disqualification

Beyond his procedurally defaulted claims, Sears presents only claims that he already raised before the State courts. As discussed above, he must overcome § 2254(d)'s deference standards, so he cannot simply rehash those claims but must instead demonstrate that the state court's factual determinations and rulings were objectively unreasonable. The Court will highlight one particular claim on which Sears has spilled a lot of ink: that "Defendant[']s jury was not impartial as demanded by the United States Constitution, denying him Due Process, [and] causing illegal incarceration." Doc. 8 at 10. Some additional background: During the voir dire portion of Sears' trial, counsel questioned the jury for bias -- like whether they would judge law enforcement officers' testimony differently than anyone else's. More specifically, would any juror fail to give the same weight to lay and police testimony? Doc. 14-8 at 67. Juror Number Four replied that she "tend[s] to put a lot of weight on what law enforcement people, what their opinions are." *Id*. She also complained that too many defendants get off on technicality loopholes. Doc. 14-8 at

---

U.S. 390, 404-05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).") (footnote omitted). Sears at most advances his belief that the trial in his case was unfair to him; he otherwise fails to cite a specific act or omission constituting an "independent constitutional violation occurring in the underlying state criminal proceedings."

72-73; *see also* doc. 14-5 at 9-10 (state habeas court's ruling on this claim).

Defense counsel Lewis objected for cause, doc. 14-8 at 82-83 ("She indicated that she thought there were too many loopholes in the law. . . ."). The prosecution responded that the juror never said she would or could not follow the law or set aside her bias. *Id.* at 83. The trial judge denied the motion, citing Georgia case law, but also noting that "[t]he pivotal question that the Court has to be entertained (sic) was not asked of the prospective jurors."[17] *Id.* at 86.

Appellate counsel raised the issue on direct appeal, doc. 13-1 at 2 (enumeration of direct appeal issues), and the Georgia Supreme Court denied relief:

> We turn now to the contention that the trial court erred when it failed to excuse a certain prospective juror for cause. During voir dire, this prospective juror said that she "tend[ed] to put a lot of weight on what law enforcement people, what their opinions are." She also said that the criminal justice system has numerous "loopholes" that allow guilty persons to "get[ ] off scot free just because one little thing wasn't done," that she "sometimes think[s] that there are more rights for criminals . . . than . . . victims," and

---

[17]   Perhaps the judge meant that defense counsel had not asked the juror whether she could set aside her bias and follow the law to render a fair verdict. The lawyer-juror colloquy, however, shows that he did. Doc. 14-8 at 75 (asking the jurors if, at the end of the trial and having heard all the evidence, anyone would have trouble finding Sears not guilty if the State failed to prove its case beyond a reasonable doubt).

that the criminal justice system involves a "revolving door" by which persons are released from prison only to commit crimes again. Whether a prospective juror should be excused for cause is committed to the discretion of the trial court, and as we have acknowledged before, the discretion of the trial court in this respect is broad. *Sharpe v. State*, 288 Ga. 565, 566(3), 707 S.E.2d 338 (2011). *See also Harrison v. State*, 309 Ga.App. 454, 454(1), 711 S.E.2d 35 (2011) ("A trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks."). We review the failure to excuse a prospective juror for cause only for an abuse of discretion, *Herrera v. State*, 288 Ga. 231, 235(6), 702 S.E.2d 854 (2010), and we see no abuse of discretion here.

*Sears*, 292 Ga. at 65-66.

Sears re-raised his claim before the state habeas court by blending it within an IAC claim. *See* doc. 14-7 at 75, 77-80 (his state habeas petition recounting "Juror #4" incident and arguing that appellate counsel was ineffective for failing to fault trial counsel's failure to challenge that juror for cause, rather than expend a peremptory challenge on her; "argument solely on bias and or fixed opinion rather than a right, as established under the 6th and 14th Amendment[s], severely hindered the pursuit of this error. . . .").

The state habeas court ruled against him. Doc. 14-5 at 9 ("Despite the fact that the juror never specifically stated on the record that she had

formed a fixed opinion, counsel felt that the answer she gave made it clear enough that her opinion was fixed. [Cit]. As counsel did in fact argue that the juror had a fixed opinion, [Sears] has failed to demonstrate either that counsel was ineffective on this issue or that he was prejudiced thereby."). That ruling is clearly supported by the record. Doc. 14-8 at 81-82.

Again, Sears must now show that the state habeas court ruling is deficient under the above-cited § 2254(d)(1) & (2) criteria (*i.e.*, cite clear and convincing evidence showing that any state court factual determinations are incorrect, § 2254(e)(1), and/or that a state court ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington*, 562 U.S. at 103). That means that he must explain *why* the state court rulings deserve no § 2254(d) respect.

Instead of doing that, Sears merely re-presents the same argument he made before those courts. Doc. 8 at 10-12; *see also* doc. 14-2 at 5; doc. 14-7 at 75, 77-80 (challenging counsel's failure to litigate "jury number 4" bias). He impliedly asks this Court to "take a second look" and, as if it

were an appellate court, reverse that court upon *de novo* review. Sears thus has failed to navigate this claim into the much narrower, § 2254(d) channel. He does reference a notable oddity -- the trial judge's ruling against his defense counsel's motion to strike the juror for cause. The judge noted that "[t]he pivotal question that the Court has to be entertained (sic) was not asked of the prospective jurors." Doc. 8 at 11 (citing doc. 14-8 at 86). It suggests that defense counsel failed to ask a critical question. *But see supra* n. 17. But Sears does not say what that is, and evidently wants this Court to make hay out of it.

It will not. Again, it is the § 2254 petitioner's burden to show § 2254(d)-deference-piercing error, and merely mentioning a ruling fragment is not enough (if anything it smacks of a stenographer's error). Sears' "jury impartiality" claim (doc. 8-1 at 10-12; doc. 8 at 10-12) therefore fails both on the facts (the record shows that trial counsel did object, and appellate counsel raised it on appeal, *see* doc. 14-7 at 11, 75, doc. 14-8 at 72-73; doc. 14-5 at 3, 5), as well as on the law (petitioner fails to pierce the above-noted ADEPA deference this Court must pay to state court rulings).

### E. Right To Remain Silent

On direct appeal Sears faulted his trial counsel for failing to renew his request for a mistrial after a witness made a reference to Sears' invocation of his right to remain silent. Attorney Lewis, he contended, also failed to object when the same witness made a second reference to that right. The *Sears* court rejected that ineffective assistance claim:

> We next consider the contention that a mistrial was necessary after a detective testified that, "when I read [Sears] his constitutional rights, he invoked[,] so he refused . . . he refused to give a statement as to what happened." On appeal, Sears argues that this testimony amounted to an improper comment upon his invocation of the right to remain silent and that it was sufficiently prejudicial to require a mistrial. But at trial, Sears said nothing about a comment upon his silence. Instead, Sears told the trial court that a mistrial was necessary because the detective had improperly commented upon his invocation of the right to counsel. For this reason, whether Sears adequately preserved the claim of error that he urges on appeal -- that a mistrial was required by an improper comment upon his silence -- is doubtful. *See Wallace v. State*, 272 Ga. 501, 503(2), 530 S.E.2d 721 (2000) (defendant failed to preserve claim that testimony improperly commented upon his exercise of right to remain silent where he failed to object on that ground at trial and instead objected only that the testimony was "unfair" and "prejudicial"); *see also Allen v. State*, 272 Ga. 513, 515(5), 530 S.E.2d 186 (2000).

*Sears*, 292 Ga. at 67. Defense counsel thus erred. But had that misstep not been made, that court reasoned, the result nevertheless would have been the same:

Here, the detective made the comment at issue in response to questions about his awareness of any threats that might have been directed to Sears. These questions were put to the detective by defense counsel, and the prosecuting attorney asked no questions about Sears invoking his rights and did not attempt to make any use of the testimony that Sears had invoked his rights. Moreover, the evidence of guilt in this case was overwhelming. The jury heard the testimony of an eyewitness to the stabbing, as well as the testimony of witnesses who overheard Sears confronting the victim on the morning of the stabbing. The jury also heard the testimony of the inmate to whom Sears confessed, testimony that was corroborated by evidence that the inmate directed police officers to the location where the knife and bloody shirt had been stashed. And Sears himself admitted at trial that he was present when the victim was stabbed, that he knocked the knife from the hand of the victim, and that he hid the knife afterwards. In these circumstances, we conclude that any improper comment upon Sears having invoked his right to remain silent was harmless beyond a reasonable doubt, and no mistrial, therefore, was required. *See Collins v. State*, 289 Ga. 666, 668-669(2), 715 S.E.2d 136 (2011); *Allen*, 272 Ga. at 516(5), 530 S.E.2d 186.

*Id*. at 68.

Sears rehashes that claim here. Doc. 8 at 19 ¶¶ 3-4; *see also* doc. 14-10 at 21-22 (trial judge's denial of defense motion for mistrial). Worse, he has resorted to "laundry listing" again, evidently believing that he can comply with § 2254(d) merely by devoting pages to describing the trial he wishes happened (with his "Roberson *really* did it" defense), then pausing to list a claim: "Counsel failed to object when the lead

detective testified a second time about defendant refusing to give a statement." Doc. 8 at 19 ¶ 4. Sears has been required to recount the facts that the jury was authorized to find, *then* present constitutional error which the state courts failed to correct. Recasting trial evidence and spritzing it with enumerated, conclusory claims, cuts no mustard here. The remainder of his non-defaulted claims ride the same rails.[18]

## IV. CONCLUSION

All of Robert Allen Sears' claims are either procedurally defaulted or fail on the merits. Accordingly, his § 2254 petition should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb.9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And, as there are no non-frivolous issues to raise on appeal, an appeal would not

---

[18] Just one example is found in Sears' response brief, where he faults his trial counsel (recall that before the state habeas court he alleged ineffective assistance only against his appellate counsel) for failing "to file proper pre-trial motions to introduce impeachment evidence against the 'real' killer, Roberson." Doc. 8 at 10 ¶ 5. Again, it was a reasonable trial strategy to *not* insult the jury's intelligence with a demonstrably outlandish claim, especially since Sears refers this Court (as supporting "evidence") to "Exhibit 3," which is nowhere to be found in the 110-page mass of documents that he filed with his brief. Doc. 8-1.

be taken in good faith. Thus, in IFP status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 3rd day of

November, 2016.

_J. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA